Nott, J.
delivered the opinion of the Court. The questions submitted to us in this case, arise out of the will of Jonah Collins, deceased ; and the clauses which require our consideration are in the following words : “ I give and bequeath unto my loving daughter Elizabeth Collins', all the remainder of my estate, both real and personal, to her and to the heiis of her body forever. Provided nevertheless, that should my said daughter Elizabeth Collins depart this life, leaving no lawful heir or heirs of her *49 body, then my will is, that the said abovementioned remainder of my estate, both real and personal, I give unto my daughter. Mary Woodberry’s eldest son, that shall be named Jonah Collins.” Other clauses of the will have been referred to in the argument, as having a remote bearing on the question submitted to us ; but I have not noticed them, because they do not appear to me to throw any light on the subject, nor to vary the construction which would otherwise be given to the clauses which I have introduced. And l am notdisposedto embarrass the case with merely speculative questions which can lead to no valuable result.
Jonah Collins died, leaving Elizabeth Collins his only heiress; and she died unmarried, without leaving any issue, and leaving Mary Woodberry the nearest relative, and heiress, both of the testator, and herself. Mary Woodberry afterwards married Richard bhackleford, by whom she had a son named Jonah Collins, who died within one year of his birth, leaving a father and mother, but no brother or sister. Mr. Shackleford afterwards had two other children, who are now the wives of the complainants. He then died leaving his wife encient of a son, who was afterwards born, and died in early infancy, leaving his mother and two sisters his heiresses at law. Mrs. Shackleford has since married R. W. Vanderhorst, the present defendant, by whom she has had several children.
The question now submitted to the Court is, to whom does the property belong % Chancellor Thompson was of opinion, that the complainants were entitled to the whole, both real and personal, to the entire exclusion of the mother and the children by the second marriage ; and he decreed accordingly. And this is an appeal from that decree.
With regard to the personal property, it appears to me, there can be no doubt. And although that point was not expressly conceded by the counsel, yet from their silence, I feel authorized to conclude, that they were of opinion it would not admit of argument. The first part of the devise is to Elizabeth Collins, and the heirs of her body forever. These words constitute a fee tail in England, and in this State, a fee conditional at common law, in the land. The same words give an absolute right to personal property. A'limitation over, alter a general failure of issue, without any qualifying.or restrictive words, has alwaysbeen construed to mean, an indefinite failure of issue ; which is too remote a contingency, and therefore the limitation is void. Some attempts have been made in this State, to construe every limitation over upon the failure of issue, to mean, issue living at the death of the first taker ; but the law has hitherto been considered as too well settled to admit of such an innovation. If any change is to take place, it must be effected by the Legislature, and not by the Court. Such then would be the effect of this will, if the words were to be taken in that unqualified sense; andthe personal property, upon the death of Elizabeth Collins, would have vested immediately in Mary Woodberry, afterwards Mrs. Shackleford, and now Mrs. Vanderhorst, as her next of kin and personal representative : and upon her marriage it would have *50 vested in her husband Richard Shackleford. The testator, howeverj goes on to say, “Provided nevertheless, that should my daughter Elizabeth Collins, depart this life, leaving no lawful heir or heirs of her body, then my will is, & a.” Now the question arises, whether the word “ leaving” qualifies the generality of the expression, so as to admit of the construction, that the testator meant issue living at the death of Elizabeth Collins, and not an indefinite failure of issue. Such was the opinion of Lord Macclesfield in the case of Forth v. Chapman, 1 P. Wms. 665, and that decision has been followed ever since in England, and adopted as the law of this State. In that view of the case, the limitation over to Jonah Collins, was good, and on his death the property vested in his father Richard Shackleford. In this case, however, it is not important which construction prevails, for in either event, it came into his hands ; and whether he became intitled by virtue ofhis marital rights, or as the representative of his deceased child, the result will be the same. ^P011 the death of Mr. Shackleford his widow became intitled to one-third ofhis personal estate, and the other two-thirds went to the three children; and upon the death of the posthumous son, Mrs. Shackleford was intitled to one-third ofhis estate, and the two ¿aughtpj.g t0 t}j0 other two-thirds. Upon what ground the Chancellor held, that the complainants were intitled to the whole estate, I have not been able to discover. The decree, therefore, must be refonred in that respect.
Bailv.Smith, 230FEdivards v. Freeman, 445PwSiSSi Hodson, 3 Atk. 1X6.
The next question relates to the real estate; and the first inquiry will be, whether this was a contingent remainder, or an executory devise. I have already remarked that Elizabeth Collins took a fee conditional in the land. And there is no rule of law better established, than that a remainder cannot be limited after an estate in fee : for when the whole is given, there is nothing remaining to go over to another. It can not therefore be a contingent remainder, and if the limitation over could take effect at all, it must have been as an executory devise.
And this leads to the further inquiry, whether the words of the will which hpve been considered, admit of the same construction when used in relation to a devise of real, as of personal estate. And that is the only question of difficulty in the case. Tha.t indeed is not a difficult question, if we are to be governed by the English authorities. In the case of Forth v. Chapman, which has already been referred to, a distinction was taken, which I believe, has ever since been permitted to prevail. 'With regard to real estate, they were construed to mean, an indefinite failure of issue, and therefore to constitute an estate tail; but with regard to personal property, to mean issue living at the death of the first taker. If that case is to be taken as authority for one of these positions, it is equally so for the other; or if. we are to be governed by the uniform current of decisions from that time to this, we shall come to the same conclusion. It is true, that in-the case of Porter v. Bradley, 3 T. R. 143, Lord Kenyon seems to .intimate, that there is no distinction between real and personal estate in that respect; but that opinion has not been received with approbation in the English Courts. Lord Eldon said *51 iridie case of Crooke v. De Vandes, 9 Ves. 203, it appeared to him “that it went to shake settled rules to their very foundation.” And in the case of Tenny v. Agar, 12 East. 261, it is said, “ there is no case where the words die without leaving issue, simply, have been adjudged to mean, without leaving issue at the time of the death. ” In the case of Porter v. Bradley, there were also the words “ hehind him,” which it is supposed had their influence in the decision of that case. And I think we are authorized to draw the same conclusion from a subsequent decision of Lord Kenyon himself. In the case of Daintry v. Daintry, 6 T. R. 307, the testator had given his estate, both real and personal, to his son John and the heirs of his body, and if he should “ die without teaming issue of his body,” then over; and the whole Court of King’s Bench, with Lord Kenyon at their head, held, that John took an estate-tail in the real estate, and an absolute estate in the personalty. And Lord Kenyon expressly recognized the distinction, made by Lord Macclesfield in the case of Forth v. Chapman, as governing th.s case then before him.
I have not gone into a very elaborate examination of the cases on this subject, because the positions which I have laid down are too well settled, and too familiar to the profession, to render it necessary that I should have done so : and the only remaining question is, whether we shall follow the English decisions, or ado|ot a new rule for ourselves! On that subject I can only say, that where we find a rule of-law settled by a train of decisions, made by the ablest and most enlightened judges of that country, and acquiesced in, and approved, after long- experience, I think we must consider it as the highest evidence of the law; and that we ought to receive it as such, unless we can see some cogent reasons arising out of the peculiar laws and customs of this country against it. It is not sufficient that we do not see the reasons on which the rule is founded. If we are to disregard all the distinctions which have hitherto prevailed between real and personal property, the reasons of which we do not perceive, we shall find ourselves in a troubled sea, from which we shall probably make our escape with difficulty. "What reason can be given why the transfer of personal property without any words of inheritance or perpetuity should give an absolute right, while the same words convey a life estate only in land I Why do the words “ heirs of the body” give only a fee-conditional in real-estate, and an absolute right in personal property? Why is the wife entitled to dower in one, and notin the other? Why upon her marriage does she retain‘her interest in her real estate, while her personal property is considered as one. of the marital rights of the husband I These and other questions which might be put, are not less difficult of solution than the one now under consideration; but yet these distinctions are recognized as a part of our law, and no judge would feel authorized to explode them.
Suppose there had been no limitation over in this case, and that Elizabeth Collins had died without leaving issue, the personal property would have gone to her representatives, and the real estate to the heirs of the testator. If she had died leaving issue, a daugh *52 ter, who had married and died leaving no issue, the real estate would ]jave returned to the heirs of the testator, but the personal estate would have vested indefeasibly in the husband. I might put other cases to shew, that we can not, by any effort that ,we can make, give a uniform operation to the same words in relation to real and personal estate; and that any such attempt would probably tend to destroy the symmetry of the law, and create new and greater difficulties than those with which we hav,e now to contend. It is also further to be observed, that dais' will was made nearly forty years ago, and we are now called upon to apply to it a rule of construction, which probably had not been .heard of at that time, merely because we do not see the reason why the same rule should not apply to real and personal estate. But if any rehson is wanted, it may be found in the case of Forth v. Chapman, where Lord Macclesfield says, those words in a devise of real estate, carry an estate-tail; and the reason “ is in favor of the issue, that they may have it, and the intent take effect.” 1 P. Wms. 667. In this State they do not indeed carry an estate-tail; but they carry a fee-conditional, and manifest the same intention that the issue should take. Whether it is a good reason or not, is not now the question. It is sufficient that such is the law; and whether it is wise, or just, does not belong to this Court to determine. As long as we adhere to established rules, we have landmarks to direct our course ; but we cannot foresee to what unexplored regions a deviation may lead. I think it, therefore, our duty to follow the decided cases. I think them not only the best evidence of the law, but that in this case it is the course best calculated to effectuate the intention of the testator. The issue of Mary Woodberry next after the issue of Elizabeth Collins, appear to have been the first object of his affection. And except for the pride of keeping up his family name, would, in all probability, have been equally the objects of his bounty.
Toómer, for appellants.
Mazyck & Frost, contra.
I am of opinion, therefore, that this must be regarded as a limitation over, after an indefinite failure of issue, and therefore, too remote and void; that a fee-conditional was given to Elizabeth Collins, and that as she died without issue, the real estate went to Mrs. Vanderhorst, as the only heiress of her grandfather.
It is therefore decreed, and adjudged, that Mrs. Vanderhorst is intitled to the land in question; that she is intitled to one third part of the personal estate of her deceased husband, Richard Shackleford ; and also to one-third of the estate of her posthumous child, deceased: and that the complainants are intitled to the other two-thirds of both estates. It is also further ordered, that it be referred to the commissioner to take an account of the value of the work and labor of the negroes : and that the case be referred back to the Court of Equity to carry this decree into effect, according to the principles herein laid down, and also to make such further orders and references as shall be necessary to a final adjustment of all matters in controversy between the parties. The costs to be paid out of the estate.
Johnson, J. concurred.

Decree reformed.

*53 Note. It may well be questioned, whether the cases cited in the foregoing opinion can be regarded as sufficient authority for the decision, that the limitation over, as to the real estate, was too remote, and therefore void. In every one of them, the limitation over, whether it’were of real or of personal estate, was held good; nor do all the books furnish a single case, in which a limitation over of real estate, has been held void, when a limitation over of chattels, by the same words, would have been held good as an executory devise. The difference recognized by the cases referred to in the construction of the seme words, when used with respect to real, and with respect to personal estate, is founded on the peculiar qualities of an estate tail, and the rules of construction which have originated in those peculiarities; and the difference, so far as it implies a difference of intention in the testator’s mind, is little more than nominal, since practically the intention of the testator is effectuated in both casos. The effect of the distinction is simply to convert the limitation, as to real estate, into a remainder, expectant upon the natural determination of an estate tail; whilst as to personal estate itstandsgood as an executory devise. But both limitations are supported, the only difference being, that the time within which the limitation of the real estate may take effect is enlarged. When such is the practical result of the distinction, the verbal anomaly of interpreting the same words in two waysmightbe tolerated, if it were only for the sake of a consistent adherence to the rule, " that no devise over shall be construed to be an executory devise, which can take, effect as a remainder.” 12 East, 262. But the principle of the distinction lies even deeper. This difference in the construction of the same words, was supposed to be necessary, in order to effectuate the intention of the testator in regard to both classes of estates: and it is based on that cardinal maxim, with reference to which all the English rules of construction are moulded, that every part of the testator’s intention mustbe carried into effect, when it does not clearly violate the policy of the law as to perpetuities; and that no devise shall be defeated, if effect can, in any manner, be given to it.
The reason of the rule, and its operation, and consequent limitation, are-strikingly exemplified by the leading case of Forth v. Chapman. Lord Macclesfield, in the first place, inquires into the actual intention of the testator. “ It'”' says he, “ I devise a term to A. and if A. die without leaving issue, remainder over; in the natural and vulgar sense this mustbe intended, if A. die withoutleaving issue at his death, and then the devise over is good: the word die, being the last antecedent, the words without leaving issue, must refer to that. Besides, the testator who is inops concilii, will, under such circumstances, be supposed to speak in the vulgar, common,‘and natural, and not in the legal sense.” 1 P. Wms. 666. And having thus ascertained the intention, and carried it into effect, in regard to the personalty, he then adverts to the necessity of a different construction in regard to freeholds, in order to effectuate the obvious intention of the testator in favor of the issue. There being no words of perpetuity in the devise to the first taker, according to a stubborn rule, which was more respected formerly than it is now, particularly in this State, the issue, if there were any, could not take, unless an estate-tail were implied; and this, it was supposed, could not be done, unless the failure of issue were construed to be indefinite. And hence Lord JVI aeclesfield observes, that “the reason why a devise of a freehold to one for life, and if he die without issue then to another, is determined to be an estate-tail, is in favor of the issue, that such may have it, and the intent take place." 1 P. Wms. 667. And although he does not, in express terms, advert to the circumstance, that such a construction will not defeat the intention of the testator in regard to the limitation over, since it is supported as a remainder by the estate-tail; yet that this was in his lordship’s mind, and furnished a ground for the difference in the construction, is evident, from what he immediately after says in relation to the difficulty of conceiving, “ how the same words, in the same will, at the same time, should be taken in two different senses.” He said, "it might be reasonable enough to take the same words, as to the different estates, in different senses, and as if repeated by two several clauses; in which case the different clauses would, as he conceived, have the different constructions above mentioned, to make both the devises good: and it was reasonable it should be so, mí resmagis valeat, quam pereat." 1 P. Wms. 667, 8.
The same principle runs through all the cases. In Porter v. Bradley, the propriety of the distinction did not in fact come in question; and Lord Kenyon, whose obiter dicta were often hasty, and ill-considered, being shocked at the *54 gtossness of the distinction adopted in Forth v. Chapman, if it were practically carried out; and not reflecting than in its operation it was little more than nominal, sa*d *n reference to it, “ If such a distinction existed in' the law, it certainly would not agree with the rule, lex plus lautíatur guando rationeprobatur: hut it is not founded in law.” 3 T. R. 146. But in Daintry v. Daintry, 6 T. R. 307, his lordship had occasion to consider the distinction more fully, both as to its principle, and jts practical effect; and he there supported the rule, because, otherwise, he would have been compelled to defeat the intention of the testator, by holding the limitation over void as to the personalty. So too in Crooke v. De Vandes, 9 Ves. 197, Lord Eldon adhered to the distinction laid down in Forth v. Chapman, in order to preserve the limitation over. Aud the decision in Tenny v. Agar, 12 East, 253, is placed by the court on asimilar ground; namely, that such a construction was the only one which could give effect to the whole will. In Sheffield v. Lord Orrery, Lord Hardwicke, commenting upon Forth v. Chapman, aud approving of Lord Macclesfield’s decision, says almost in his words; “ and I think it very reasonable to take words in a different sense, with regard to the different estates, to support the intention of the party, vi res magis valeat quam pereat.” 3 Atk. 288. And in the case of Fonnereau v. Fonnereau, the same learned judge uses the following strong language : “ People frequently differ in expression, though they mean the same thing; and it would be construing wills by too great a nicety, to lay weight upon such strict forms of words when the meaning is plain. I never knew a case where this Court has departed from such a latitude of construction, as the courts of law would have made unon a limitation of a freehold estate, in order to defeat abequest over, though it has frequently done so to support a devise over.” 3 Atk. 318.
Such being the spirit of the English cases, and such the principle and operation of the rule, if Lord Hardwicke is correctas to the practice in cases where the reason of the rule does not apply, it is certainly a question deserving very grave consideration, whether these eases can furnish to our Courts any authority to apply a similar construction to devises of real estate here, where it must produce a directly opposite effect, and in every instance defeat the acknowledged intion of the testator, which it was the sole purpose of the rule, in its origin, to effecticate. The object of all rules of construction is to ascertain the intention; and therefore aruieof construction, which implies two opposite intentions from the same words, shocks the common sense of mankind. It may nevertheless be acquiesced in, when it is shewn, that from the specific difference in the qualities of the estates to which the construction is applied, not only is the distinction merely nominal, but it is even necessary to resort to it, in order to carry the whole intention into effect; but when this specific differefice does not exist, and the rule is nevertheless applied, and enforced, in its naked deformity, so as to defeat the intention, which is admitted by the rule itself, it becomes revolting to the moral sense also, and cannot fail to bring the law into merited disrepute.
Nor would it be going too far to say, that the distinction recognised by the English Courts is not even literally applicable to real estates here. It is true, that in most of the cases, the distinction is spoken of, as one. existing between devises of terms and devises of freeholds: but in England'all freeholds are capable of that peculiar limitation known as an estate-tail; and all the cases shew that the distinction is founded on the double capacity of an estate-tail, first as a particular-estate, to support the most remote limitations over, as remainders, and secondly, asan estate of inheritance, to be transmitted to issue. And Lord Hardwicke, so expressly limits the rule in the case of the Earl of Stafford v. Buckley; in which he said, “ according to Forth v. Chapman, a different construction may be put on the same words in respect of estates capable of such a limitation in tail, and of those not capable of it.” 2 Vesey. 181. When, therefore the Court decided thatafee-conditional was not aparticular estate,and could notsupportaremainder, limitations over upon such estates were placed without the operation of the doctrine laid downin Forth v. Chapman. Itwasdeciding thatno estate in this country is “ capable of such a limitation in tail;” and therefore removed all ground for introducing the monstrous anomaly, oí construing two different intentions out of the same words, as applied to real or personal estate. It is no answer to say, that an estate-tail and a fee-conditional are analogous estates. They are not analogous in the very particular, on which the distinction recognized by the English Courts is founded; and cessante ratione cessat ipsa lex. Neither is there any thing in the notion, that such a rule of construction is necessary in order to *55 effectuate the intention in favor of the issue; for this may be effected by construing the devise to be of a fee simple, a construction which has always prevailed in this State, whenever the testator has in any way manifested an intention to part with the reversion. The stubborn old English rule on the subject has never fully prevailed in this State. Vide Dunlap v. Crawford, 2 M’C. Ch. 171, and the cases then* cited. But even were it necessary to construe the words “ die withoutleaving issue,” to mean an indefinite failure of issue, for the benefit of the issue; why not at the same time construe them to mean a failure of issue at the death ofthe party, in order to support the limitation over ? This to be sure would be to make the same words mean, at the same time, different things; but certainly it is quite as allowable to do so, in order to support the intention, as itis in order to defeat it.
The other point decided in this case, to wit: that a fee-conditional cannot supporta remainder, it is notintended to controvert. The question has since been very fully considered, and the decision in this case recognized, in several instances; and the question must now be regarded as settled. Bedon v. Bedon, 2 Bailey, 231. Adams v. Chaplin, 1 Hill’s Ch. 265. Edwards v. Barksdale, 2 Hill’s Ch. 184. Deasv. Horry, Ib. 244. This decision conforms to the current ofthe English authorities from the time of Plowden, downwards; and moreover tends in its results to simplify one of the most intricate branches of our law, and to free itfrom a mass of metaphysical jargon, by which the analogous department of the English law is obscured. It must, however, have so important an influence "on the whole ofthe law relating to limitations of real estate, that it will be proper to make a few observations upon it, with reference to the principal subject ofthis note.
The capacity of a fee-conditional to support a remainder, presents a question respecting which different opinions have been maintained; and Mr. Preston regards it as even yet “ not finally, fully, and exclusively settled.” 2 Prest. Est. 318. Mr. Preston himself, one of the most learned, profound, and discriminating commentators upon the law of real estates, maintains the affirmative, 2 Prest. Est. C. 7: — and he refers to Bracton, who wrote before, and the author of Fleta, who wrote immediately after the statute do donis, and to a number of other authorities deserving great consideration on such a question, to establish the position, that similar limitations were allowed by the old law, before that statute. See these authorities collected, 2 Prest. Est. Ch. 8. And the authorities, to the contrary, which are of comparatively modern date, are entitled to less weight, for two reasons : first, that the question was a speculative, rather than a practical one, inasmuch as the statute de donis, by converting fees-conditional into estates-tail, had rendered it impossible, that the validity of such a limitation could be brought into question; exceptindeedinsomevery rare instances respecting personal hereditaments, such as annuities in fee: and cases of this sort did not arise until long afterwards. And secondly, the supp osed separation of the fee into a particular, estate, and the reversion, which was alleged to have been effected by the statute de donis, was the very contrivance fallen upon by the judges, two hundred years after the statute was passed, in order to defeat the statute, by holding that the entail might be barred by a common recovery, 2 Inst. 335; and thenceforth it became necessary, ever afterwards to maintain, that a limitation after a fee-conditional was not allowed before the statue: a proposition, which from the infancy of the law in the reign of Edw. 1, when the statute was enacted, and the slender records which remained ofitin 12 Edw. 4, when Taltarum’s case was decided, it would not have been easy to controvert, however unfounded, vide Willion v. Berkeley, Plowd. 235, 242. But is it the proper mode ‘of considering such a question, to conduct the inquiry merely with reference to what was the old law on the subject? Are not the improvements, and amendments, which,have been made in the law since, not only by statute, but by judicial decisions also, applicable to these, as well as to all other estates, and all other subjects on which the law operates? It is very eloquently and forcibly said in one of our reported cases, that “ there is asort of judicial legislation, as it is called, which is inevitable and legitimate. In the progress of society, from a state of more simple to a state of more complicated relations, general principles must be pursued to their consequences ; and subordinate rules deduced from those which are more general. Perhaps no case is decided which does not furnish grounds for the decision of other cases, differing ill some degree from it, by fair and necessary induction. In this way, a system of laws, once simple, may be carried out, and adapted to the *56 infinite variety of human transactions. But this is improperly called legislation. As new cases arise they must lie decided by induction and analogy; and this is not the making, but the expounding oflaw.”.per Harper, J. in State v. Witten, 1 Hill, 108. The learning of remainders grew up, and was settled, andrefined by the judges, long after the statute dedonis was enacted: and when a question mdses asto thecapacily ofafee-eonditioualto supportaremainder,isitnotthelegitimate m0(je ot determining it, to inquire whether, according to the general principles of the law of remainders, the autientestate in fee-simple conditional at eommonlaw, is, or is not, such ail estate, as leaves a residuary interest in the grantor capable of limitation by way ofremaiuder / If this be the true inquiry, there could scarcely be two opinions asto the answer. The only argument ever urged for the negative, viz. that “ afee cannot be mounted on a fee,” is a merely verbal sophism. A fee-conditional is no more the wliole fee, than a fee-tail. They are interests ofprecisely the same extent and duration. The possibility of reverter, as it is called, is no more a possibility than the reversion after an estate-tail. In point of certainty, as well as quantity, they are identical. If then a remainder can be limited upon ail estate-tail, no soundreason can be alleged fornot allowing a similar limitation upon a fee-conditional. And see the consequences of the contrary rule of decision, and of referring merely to what was the old law previous to 13 Edw. 1, for settling questions of this sort. To say nothing of the statute of wills, our own act of 1734, P. L. 139, provided that all persons “having any estate, or interest, ill fee-simple in lauds,” should have power to dispose of them by will. And yet, because it is said, that before the statute de donis, there could be no limitation over upon a fee-conditional, it is held, that a testator in South Carolina cannot devise his right of reverter. Is not the right of reverter an interest in fee-simple in lands? The courts have, in effect, decided that it is so. Deas v. Horry, 2 Hill’s Ch. 244, and see Jones ads Postell and Potter, 1 Harper, 92. And to call it “ a mere possiblity,” will not change its nature. It is precisely the same possibility as the reversion after an estate-tail: and besides, it is now settled, that every interest in lands, although it be what is called a possibility, if it is descendible, is also devise-able. Jones v. Perry, 3 T. R. 88. In that ease, it should be remarked, that the decision wentupon the ground, that the statute of wills “enables persons having any manors, lands, &c. to devise; which must mean having an interest in the lands,” 3 T. R. 93. The latter words being the very terms which are used in our act of 1734. Here then, in consequence of directing the attention exclusively to the old law, the courts have actually repealed the plain import of an express enactment of the Legislature, upon no other ground than amere speculation, as to what the law was, on a disputed point, in the time of Edward the First.
These remarks are not made for the purpose of suggesting a review of the decision, in relation to the question as to the capacity of a fee-conditional to support a remainder. The question is settled; and it is of much more importance that it should be settled, than thatitshould be settled in any particular way. If the decision has left an evil m our legal system which requires correction, the Legislature may correct it. And it certainly is an evil, that real estate should be clogged with an incumbrance, in the shape of a possibility of reverter, which even the owner of the incumbrance cannot remove, or release, either by will, or by deed. But an evil like this cannot long be permitted to exist in a society, so essentially commercial in its character as ours; and if the remedy applied should be an abolition of fees-conditional, by converting them into fees absolute, the decisions referred to will have led to a fortunate result. These comments, however, have been offered with a very different object: viz. to exhibit the error in principle, and the evil in the consequence, of deciding questions of this sort, with exclusive reference to antiquated rules of law; and without regard to the “ progress of society from a state of more simple to a state of more complicated relations,” instead of “pursuing general principles to their consequences,” and “ deciding by induction and analogy” from the existing state of the whole law: the inevitable result of which must be, to render the law a mass of incongruous and unintelligible rules, without principle or symmetry, and alike unworthy of the age and the people to which they belong.
The establishment of the rule, that a fee-conditional canuotsupport a remainder, renders nearly all the English rules in relation to the construction of devises of real estates, wholly inapplicable in this country. They are all moulded with reference to this capacity of an estate-tail, in conjunction with its qualities as an *57 estate of inheritance; which peculiarities render that estate so convenient an instrument for effecting the various intents of a testator, whilst its liability to be barred by afine or recovery avoids all objection to it as a perpetuity, that it has long been a great favorite with the English Courts. It is implied whenever there exists the slightest ground for the implication; and a large portion of the rules for the construction of devises of land have for their sole immediate object, the creation of estates-tail by implication. In their ultimate results all these rules effeet their legitimate object of carrying out the intention of the testator: but they would not produce this effect if applied to bequests of personalty, which are not capable of limitation in tailj.and for that very reason their operation is confined by the English Courts to devises of lands, which alone are capable of such limitation. As so on then as it was ascertained, that a fee-conditional would not support a remainder, these rules of construction became as inapplicable to devises of land here, as they are to devises of personal estate in England; and the attempt to apply them can lead to no other result, than to violate the reason of the rule, and defeat the intention of the testator, which it was the object of the rule to carry into effect; and finally to involve the law itself in inextricable confusion.
Shall we then persist in applying the English rule, independently of its reason, and with inverted effect; or should we not rather adopt anew rule of our own, carrying out the reason of the English rule, and producing uniformity in the results? It is, said, that this “ would probably tend to destroy the symmetry of the law, and create new and greater difficulties than those which we now have to contend with:” but it is clear, that this must be the result of adhering to the letter of the old rule, instead of carrying out its spirit by a new one. It is amistake to say that the new rule removes land marks. The land marks are removed by the decision which destroyed the analogy between estates-tail and fees-conditional; and the new rule does no more than give us the true hearings of the new positions to which they have been removed. To persist in adhering to the letter of the old rule, after so radical a change in the subject matter on which they are to operate, is very much like attempting to navigate a new sea, by maps and charts, which represent only the coasts and shores, the rocks, banks, reefs, and breakers of another.
It will be cheerfully conceded, that it is not, in all cases, a sufficient reason for deciding against a settled rule, of law, “that we do not see the reason on which the rule is founded." Yet a judge, who decides, without looking to the reason of the rule, will as often decide against the law, as in conformity to it. And there is, morfeover, a vast difference, in regard to the legitimate control which Courts possess over them, between iules of law, properly so called, and rales of construction. The latter are the mere creatures of the Courts; the instruments which themselves have made, as a guide to the intention in doubtful cases. The rule of law is, that the intention shall be pursued; and the Courts transcend their authority, not when they remodel their rules of construction, so as to effectuate the intention, but when for any reason, they adopt, or enforce, a rule which habitually defeats the intention. The rules of construction, of the English Courts, like their rules of practice, have always been applied by our Courts, under modifications suited to our own institutions. Hundreds of instances of this might be cited from our books, to which it would be needlessly tedious to refer. It will be sufficient to mention the cases in relation to devises without words of perpetuity. See Dunlap v. Crawford, 2 M’C. Ch. 171; and see also for the English cases to the contrary, the opinion of iNott, J. in Hall v Goodwyn and Moore, 2 N. & M. 334. Even the learned judge, who delivered the opinion in this case, although m general strongly opposed to a departure from the English decisions, seemed to think, in Hudnal v. Wilder, 4 M’C. 294, that the difference in the substantive character and value of real and personal estate in this country, and in England, would warrant a departure from the rule,-settled by the decisions in that country, on the construction of the st. 27 Eliz. After some remarks on the Seculiar character of property in slaves; he observes, “ It is difficult to eompreend, how even a statute of the British Parliament can make a person believe, that a conveyance, containing both real and personal estate, or contemporaneous deeds, one conveying real, and the other personal estate, attended with precisely tire same circumstances, and made with the same object, can be good as to one, and fraudulent and void as to the other.” 4 M’C. 301. And further on he says, “ The question then is, whether we shall adopt the English decisions to the whole extentto which they have gone, or whether we shall give our own construction *58 to the statutes, and adopt a uniform rule both as to real and personal estate.” Ib. And he decides for the latter, with reference indeed to the meaning of the statute, but with regard also to our own peculiar institutions. And to go no further back than the preceding pages, the same learned judge has decided in Young v. Teague, (ante,p. 13.) that the English practice of opening biddings, on sales by the Master, is not applicable to sales by the Commissioner here.
The opinion in the present case contains this remark: “ It is also to be observed, that this will was made nearly forty yeais ago; and we are now called upon to apply to it a rule of construction, which probably had not been heard of at that time, merely because we do not seethe reason why the same rule should not apply to real and personal estate.” If we are to judge of what the law was “forty years ago,” by the report of the contemporaneous case of Cruger v. Heyward, 2 Desaus. 94, the limitation over in the present will, was regarded as good, so far as relates to the real estate; for in that case, which was very extensively argued, and very carefully considered, the Court, consisting of Chancellors Rutledge and Marshall, decided that a limitation over, on the natural determination or efflux of a fee-conditional, was valid. That case was probably looked upon to be good law at the time, and long afterwards; and it does not appeal- to have been overruled, or even questioned, until the law was altered by the decision in the present case. And yet that case is not even cited in this opinion: from which it may, perhaps, be fair to infer, that neither the question itself nor its important bearing on the general law, received that full consideration, which the learned judge would Have bestowed upon it, and which he was so well qualified to bestow upon it, if his attention had been more immediately directed to the subject.
The whole subject did, however, receive a very full consideration in the subsequent case of Bedon v. Bedon, 2 Bailey, 231; and there the Court having sustained the decision in this case, that a fee-conditional cannot support a remainder, decided also, that, as a consequence of it, all the English rules of construction, which create estates-tail by implication, become inapplicable to devises of real estate here. And they refused to imply a fee-conditional from words, which in England would have been held to give an estate-tail by implication; but they construed the devise to be of a fee-simple, in order to support the limitation over, so that effect might be given to the whole of the testator’s intention. The same doctrine has been maintained and enforced in the subsequent cases of Adams v. Chaplin, 1 Hill’s Ch. 265, and Edwards v. Barksdale, 2 Hill’s Ch. 184: and in the two last mentioned cases, it seems to be intimated, that a gift to one and “ the heirs of his body,” will be regarded as essential to the creation of an estate in fee-conditional, for that these are the only words, which at common law could raise that estate; and that all other words which have been held to give an estate-tail, do so only by implication, and construction of the testator’s intention. 1 Hill’s Ch. 282, 2 Id. 198.
These cases rest upon a basis of sorrnd reasoning: and itis tobehopred, that as new ca-es arise, the general principles of these decisions will be carried out to their consequences and applied. If they are, the rule of construction, which imputes a difference of intention to a testator in respect to his real and his personal estate, when he devises both by the same words, must certainly be abandoned: and if ever the question again comes up, it will not perhaps be regarded as having been definitively settled by the decision in Mazyck v. Vanderhorst.